HALLIE GORDON TURNER, Appellee, v. CITY OF WINTERSET, Appellant.

No. 40131.

FEBRUARY 18, 1930.

REHEARING DENIED MAY 16, 1930.

*Daniel J. Gallery,* for appellant.

*Percival & Wilkinson,* for appellee.

ALBERT, J.—On the west side of Block 4, West Addition

to the defendant city, was a cement sidewalk. Defendant had constructed a brick crossing across an alley in the center of the block, joining the cement sidewalk at either end thereof. A sanitary sewer was constructed along this alley, and this brick alley-crossing was torn up, for the purpose of construction. It was replaced in 1926, and again repaired in the fall of 1927, and was 16½ feet long and 4 feet wide.

Plaintiff claims,—and there is some evidence to support it, —that this alley-crossing was lower than the ground on either side of it; that, on account of the sewer's having been constructed under the alley-crossing, it settled, so that at its lowest point it was about six inches lower than the cement walk at either end, and the larger part of the settled portion was toward the south end of the crossing; that, after such settling, and long before the accident in question, there was standing water on the settled portion of the crossing; that it did not drain therefrom, and that there was ice on the crossing for some two weeks prior to December 21, 1927, the date of the accident. This plot of ice is shown to have been from 6 to 7 feet in length, and practically the width of the crossing. The evidence further shows that the north part of this plot of ice, by reason of having been passed over by pedestrians and frozen thereafter, was in a rough, ridged, and uneven condition; that the rest of the plot of ice to the south was smooth; that children, in passing along this sidewalk, skated or slid on the smooth part of the ice.

As to the ridges of dirt on either side of the crossing, one witness testified that it looked as though it had been shoveled off the bricks and thrown on either side and had formed a bank of dirt across, so that, when vehicles passed over it, they left tracks five to seven inches deep. The depression in this alley-crossing was filled with water on various occasions when it rained, or when snow and ice melted and ran therein, and it stood there until it soaked away, having no outlet. Aside from the condition of this alley-crossing, the walks on either side were dry.

About 11 P. M., December 21, 1927, plaintiff attempted to pass over this alley-crossing, stepped on the ice, slipped, and fell, the fall resulting in the injuries of which she complains. The case was tried to a jury, which returned a verdict for the defendant. Plaintiff filed a motion for a new trial, which was sustained; hence this appeal by the defendant.

The material part of the motion for a new trial, so far as we are concerned, is an assault upon the instructions, and a claim that only one ground of negligence was submitted, bottomed on the fact that the ice in this depression had become rough, ridged, and uneven; whereas another ground of negligence should have been submitted, to wit, the negligence of the city in permitting this depression to exist as it did, and allowing water to settle therein and freeze in a smooth condition. In other words, the point is that, as to this plot of ice, a part was rough, ridged, and uneven, and another portion of the surface was smooth. Plaintiff was of the opinion that this latter phase of negligence should have been submitted, and that the court erred in not submitting the same; and the court so held, on the motion for a new trial.

As we read plaintiff's pleadings, this distinction does exist. The question is raised by an objection to the seventh instruction; but, to understand the real situation, we must also consider the sixth instruction. In the latter instruction the court said, in part:

"The charges of negligence made against the defendant are as follows: (1) That the defendant was negligent in maintaining the brick walk across the alley referred to in plaintiff's petition, in such condition that it would gather and hold water sufficiently to practically cover said brick walk, in which condition it froze, and rendered said walk dangerous and unsafe; (2) that ice had accumulated on the alley-crossing in question, and, by reason of vehicles and pedestrians' passing over the same while it was thawing and freezing, had become ridged, slanting, uneven, slippery, and dangerous for persons to pass over it."

The seventh instruction covered the second of the above grounds set out in Instruction 6, but nothing whatever is said in any instruction about the ground of negligence referred to in the first division of said Instruction 6.

The court, in a written ruling on the motion for a new trial, among other things said:

"If the walk or crossing itself was defective by reason of its being so constructed or permitted to settle, and by reason of its being banked by dirt, so that water from outside sources accumulated and settled there and froze, and the defect in the

crossing, combined with the icy condition, was the proximate cause of the accident, the plaintiff would be entitled to recover, and that question ought to have been submitted to the jury without the limitations contained in the seventh instruction.''

The ruling of the court on the motion for a new trial was bottomed solely and only on the error in the seventh instruction, and was specifically overruled on all other grounds. The question we have before us is: Did the district court err in sustaining the motion for a new trial?

In the case of *Langhammer v. City of Manchester,* 99 Iowa ·295, it was claimed that the sidewalk was constructed in a slanting condition, so that ice and snow melting thereon ran down and froze upon a step, and that the step had settled on one side, so that it inclined. In relation thereto, the court instructed that, if the injury was produced by two causes, namely, the slant of the steps in question and a coating of ice thereon, the result of a storm the night before, 'the latter being a cause for which no one was responsible, the plaintiff could not recover unless she had shown by a preponderance of the credible testimony that the slant of the step was the real cause of the injury, but for which it would not have happened; that neither could a recovery be had if it was equally as probable that the injury came from the one cause as the other. With reference thereto we quoted the following rule from a New York case:

''When two causes combine to produce an injury to a traveler upon a highway, both of which are in their nature proximate, the one being a culpable defect in the highway, and the other some occurrence for which neither party is responsible, the municipality is liable, provided that the injury would not have been sustained, but for such defect.''

In *Ford v. City of Des Moines,* 106 Iowa 94, it was held that it was a question for the jury whether or not the city should be held liable in a case where there was a slanting and icy condition of the sidewalk for which the city was not responsible.

In *Hodges v. City of Waterloo,* 109 Iowa 444, the doctrine laid down in the *Langhammer* case is re-indorsed. It is to be noted in these cases, however, that the term ''culpable defect'' is always used. So, in the application of this rule, where two

causes are claimed to co-operate, one of them must be a culpable defect. What is a culpable defect?

Before answering this question, it might be well to understand the exact situation. While, as heretofore stated, the depression in this alley-crossing was six inches, it is to be noted that the same was not an abrupt depression, but slanted from the sidewalk on either end of the crossing to the lowest point, thus making a saucer-shaped depression. It seems to be the general rule that, where the defect in a sidewalk is so slight as to be harmless in itself, the fact that it concurs with a slippery condition of the walk in producing an accident does not make. the municipality liable. We have recognized this rule in a line of cases commencing with *Ford v. City of Des Moines,* supra; *Beirness v. City of Missouri Valley,* 162 Iowa 720; *Johnson v. City of Ames,* 181 Iowa 65. That it seems to be well recognized outside of this state, see *Beaton v. City of Milwaukee,* 97 Wis. 416 (73 N. W. 53); *Koepke v. City of Milwaukee,* 112 Wis. 475 (88 N. W. 238); *Hamilton v. City of Buffalo,* 173 N. Y. 72 (65 N. E. 944); *Jenkins v. Mayor and Council of Wilmington,* 5 Boyce (Del.) 471 (94 Atl. 768); *Free v. District of Columbia,* 21 D. C. (1893) 608; *Hopson v. City of Detroit,* 235 Mich. 248 (209 N. W. 161); note, 13 A. L. R. 17.

In other words, to be a concurring cause, within the general rule, the depression must be such as that, if the city allowed it to remain, it would be guilty of culpable negligence; and this term, as we understand it, under the decisions, means negligence for which, when an accident occurs therefrom, the city will be called upon to respond in damages. See *Norman v. City of Sioux City,* 197 Iowa 1310; *Geringer v. Town of Marcus,* 203 Iowa 41, and cases there cited.

In the case of *Eickelberg v. City of Waterloo,* 197 Iowa 1219, water flowed on the sidewalk down an inclined cement driveway, where it froze into a smooth sheet. It was there urged that the water was artificially upon the sidewalk, and that the ice formed was artificial ice. We there said:

"The evidence is clear that the ice complained of was level and smooth. It was in its natural form and condition, and had not been changed by any artificial means; had not been changed by tramping of pedestrians or by vehicles, driving over the same, or in any manner whatsoever, but existed in its original and

natural state. Under this situation of facts, the city was not liable for injuries sustained by the appellant; and for this reason alone, without consideration of other features of the case, it was not error to direct verdict in favor of the city. * * * There are numerous other cases holding that a city is not liable for injuries sustained by persons slipping upon ice made level and smooth by natural causes. Among them are [is] *Tobin v. City of Waterloo*, 131 Iowa 75.''

To summarize: To allow the defect in this case was not culpable negligence on the part of the city. In other words, it was not negligence for which the city would be called upon to respond in damages in case someone was injured thereby. Again, the fact that the ice was smooth, and in the form and condition in which nature left it, would not create a liability on the part of the city. Without further elaboration, it is apparent that, even though the plaintiff's petition attempts to allege a cause of action bottomed on the question of negligence set out in the first paragraph of Instruction 6 given by the court, in fact the same does not state a negligence for which the defendant would be liable. This being true, the only ground left for liability on the part of the city was for injury to the plaintiff caused by a fall on the part of the ice which was rough, ridged, slanting, and uneven. That question was submitted to the jury in Instruction No. 7, and the jury found for the city. The court therefore submitted to the jury the only question plaintiff had in the case, and it should not have sustained the motion for a new trial.—*Reversed.*

MORLING, C. J., and STEVENS, DE GRAFF, and WAGNER, JJ., concur.