ANNA CLARKE, appellant, v. GROVER C. HUBBELL et al., trustees of the Frederick M. Hubbell estate, and CITY OF DES MOINES, appellees.

No. 49129.

(Reported in 86 N.W.2d 905)

DECEMBER 17, 1957.

Steward & Crouch and C. J. Cardamon, all of Des Moines, for appellant.

Hoffmann & Hoffmann and John Paul Jones, all of Des Moines, for Grover C. Hubbell, Frederick W. Hubbell and James W. Hubbell, trustees of the Frederick M. Hubbell Estate, appellees.

Milton W. Strickler and D. J. Fairgrave, both of Des Moines, for appellee City of Des Moines.

GARFIELD, J.—The defendants who are trustees of the Fred-

erick M. Hubbell estate (herein called the Hubbells) own a brick business building at the southeast corner of the intersection of Twelfth Street (running north and south) and Grand Avenue (which goes east and west) in the city of Des Moines. There is a cement sidewalk twelve feet wide along the north side of the building on the south side of Grand Avenue. The entrance to the building faces northwest in a recessed area, triangular in shape, at the northwest corner. A brick pillar is at the northwest corner of this small area.

There is a low place in the sidewalk, about seven-eighths inch deep at its deepest point, just north of the entranceway and also east of it where water stands following rains. Roughly half this low place is east of the entranceway and the other half is north of it. This sunken place extends out from the building about four feet and is nearly eight feet long, east and west. About 6:30 a.m. on March 29, 1954, plaintiff, age 64, while walking to her work at Eleventh and Grand, fell on ice covered with about an inch of fresh snow two to three feet north of the east edge of the entranceway. There is substantial evidence the ice was rough, ridged and uneven. Plaintiff sustained a very serious permanent injury to her brain.

Plaintiff brought this law action against the Hubbells and the city to recover for her injury. At the close of her evidence the trial court directed a verdict for the Hubbells on the ground plaintiff failed to prove negligence on their part which was a proximate cause of the injury. The city offered no testimony and the jury returned a verdict in its favor. Plaintiff has appealed from judgment on the verdicts, assigning as error the direction of verdict for the Hubbells and, for the most part as to the city, several instructions to the jury.

█ I. In considering the claimed error in directing a verdict in favor of the Hubbells of course it is our duty to view the evidence in the light most favorable to plaintiff. Strom v. Des Moines & Central Iowa Ry. Co., 248 Iowa 1052, 1056, 82 N.W.2d 781, 783, and citations.

Plaintiff's case against the Hubbells is based on the claim that before July 1953 water escaped from the sunken area on the sidewalk by running into a crevice between the south edge of the sidewalk and the north wall of the building; during that month,

to prevent water from seeping into the basement of their building through this crevice, the Hubbells cleaned out the crevice and caulked it with a mixture of asphalt, cement and sand and also built an apron or ramp of the same material just north of the entranceway which extended onto the south edge of the sidewalk eight to nine inches, with a height of one and one-half inches at the entranceway; these repairs prevented water from escaping from the low place in the sidewalk and thus made it more dangerous.

It clearly appears the Hubbells made the repairs just referred to in an attempt to prevent water from seeping through their north basement wall. It is also shown the repairs accomplished the purpose for which they were made except when rains were unusually heavy. It is not so clear, however, that before these repairs were made the water escaped from the sunken area on the sidewalk through the crevice along the north wall of the building or that the repairs caused the area to be substantially more dangerous than before.

The rule of law plaintiff contends renders the Hubbells liable is that expressed in Case v. Sioux City, 246 Iowa 654, 660, 69 N.W.2d 27, 30. We there point out that although an abutting property owner is not liable for injury caused by a defective sidewalk he failed to repair, he is liable for injury caused by some affirmative act of his which renders the sidewalk unsafe.

Liability of the abutter for his affirmative acts usually finds application in cases where he builds an excavation or barrier in or near the sidewalk or constructs a downspout from a building that discharges water on the walk. But as our Case opinion, supra, points out, we see no difference in principle between such instances and a case where the abutting owner's affirmative act is repairing the sidewalk.

Mutzel v. Northwestern Bell Tel. Co., 247 Iowa 14, 18, 72 N.W.2d 487, 489, denies liability, under the particular facts, of an abutter for injury from a fall on an icy sidewalk but recognizes he may be liable where he maintains his property in such manner that ice forms on the walk as the result of artificial rather than natural causes.

We are unable to find substantial evidence that the repairs made by the Hubbells in 1953 caused the walk, at the place

where plaintiff fell, to be more hazardous than before. It is probably true that before these repairs were made some water escaped from the low place in the walk through the crevice at its south edge and that afterward a little more water stood in the low place than before. But we think it is not shown that the condition of the walk where plaintiff fell was caused, to a substantial extent, by the repairs made by the Hubbells in 1953. A finding in plaintiff's favor on this issue must be based in part on conjecture. We therefore must affirm the judgment on directed verdict in favor of the Hubbells.

We will refer to the evidence which leads us to this conclusion. Mrs. Simms worked for plaintiff's employer for five years preceding the trial, two years after plaintiff fell, and was with her when she was injured. She testified that during the three years before plaintiff fell she observed water standing at that place following rains, and photographs showing standing water in the sunken area, taken after plaintiff's fall, represent the condition of the walk following rains during the years she passed the area. On cross-examination Mrs. Simms said the condition exhibited by the pictures was the same every time it rained and she had observed that for three years before the accident.

Mrs. Fuller worked with plaintiff over twenty years and passed the low place in the walk each workday for a great many years. She too was with plaintiff when she fell. She also testified the photographs above referred to show conditions there after a rain for a period of years before plaintiff's injury in March 1954. On cross-examination this witness said that at the various times it rained during the twenty years she has been over this sidewalk the water was always collected at the same point.

Mr. Mills worked for Iowa Bearing Company, tenant of the Hubbells' building, five years ending about the time plaintiff was injured. He testified the photographs above mentioned show conditions after rains during the five-year period, he would sweep the water out of the low place following rains and when it formed ice he put ashes or salt on it, the caulking prevented some water from escaping from the walk into the basement. On cross-examination Mills said after the caulking was done water still collected in the low place the same as before "on the average—somewhere along the same setup."

Mrs. Roberts worked for the same employer as plaintiff for five years and at an earlier time some ten years before the trial. She fell at about the same place plaintiff did that same morning. She testified that during her employment, before the time plaintiff fell, she observed water standing in the depression in the walk when it rained and also ice in that general location and the photographs represented the appearance of the walk when she saw water standing on it. On cross-examination the witness said "it was always approximately the same puddle. I do not know there was any difference between the first and last times I observed it. The amount of water would depend upon the amount of rain."

Mr. Figg worked for the tenant, Iowa Bearing Company, nearly ten years before plaintiff's fall. He was the company's manager at time of trial. He testified that after the caulking was done water did not get into the basement from ordinary rains but before then water stood on the walk about the same. On cross-examination he said he could not say there was more water collected on the walk after the caulking was done—it was about the same.

As previously indicated all these witnesses were called by plaintiff. The women at least seemed to be very friendly to her. Mr. Mills appeared to be disinterested. We have considered the plat Exhibit N, showing various levels in the area in question. While the exhibit does not support all the Hubbells claim for it, it is not in conflict with the oral testimony above referred to.

■ II. We consider now plaintiff's objections to instructions to the jury in her case against the city. We think it was error not to submit to the jury plaintiff's charge that the city was negligent "in failing to remove rough, ridged and uneven ice from the sidewalk." As stated, there is substantial evidence to support this specification.

The court submitted to the jury two charges of negligence. The second of these need not be considered. The first is that the city was negligent in permitting the sidewalk to be in a defective condition for an unreasonable time, which, in conjunction with rain that froze and became rough and uneven ice and was covered by snow, created a dangerous condition. This specification

combines plaintiff's charge b, which is identical with the court's specification down to the first comma, and a paraphrased version of plaintiff's charge g, above quoted.

It is not unusual or improper for instructions to juries to paraphrase pleaded specifications of negligence. Smith v. Pine, 234 Iowa 256, 263, 12 N.W.2d 236, 241, and citations; Bonnett v. Oertwig, 234 Iowa 864, 865, 14 N.W.2d 739, 740, 741. But these instructions require plaintiff to prove both her specification b and a paraphrased version of g, whereas proof of g, which the court refused to submit as a separate specification, was sufficient proof of the city's negligence. See Geagley v. City of Bedford, 235 Iowa 555, 560, 16 N.W.2d 252, 255, 256, and citations; Annotations, 13 A. L. R. 17, 29; 80 A. L. R. 1151, 1156.

Moreover the alleged defective condition of the walk, a "saucer-like" depression less than an inch in depth, was not such a culpable defect as rendered the city liable either under the court's instructions or the law. Turner v. City of Winterset, 210 Iowa 458, 462, 229 N.W. 229, and citations; Annotations, 41 A. L. R.2d 739, 744.

Since plaintiff's petition contains her specification b she is not in position to complain of its submission to the jury although clearly it should not have been submitted. It has no proper bearing on plaintiff's right to recover except upon the question of notice to the city hereinafter considered. But plaintiff has a perfect right to object that her specification g was not submitted except in combination with b and under the requirement that both b and paraphrased g must be proven. The effect of the instructions in this respect was to make virtually impossible a finding the city was negligent.

Of less importance than what we have just said is the fact that in paraphrasing specification g the instructions change it by making no reference to plaintiff's allegation the city was negligent *in failing to remove* rough, ridged and uneven ice.

III. Plaintiff's objections to instructions 9 and 11 must also be sustained. They, together with No. 10, deal with the question of the city's knowledge, or notice to it, of the condition of the sidewalk.

The evidence is that it stopped raining about twenty-four hours before plaintiff's fall and started to freeze about seventeen

hours before the fall. As stated, plaintiff was injured about 6:30 a.m.—on a Monday. It is therefore apparent the jury might conclude the city was not charged with notice of the claimed rough and uneven ice a sufficient time before plaintiff fell to afford reasonable opportunity to remove it.

Plaintiff requested an instruction which included the statement that if the city, in the exercise of ordinary care, should have known of a situation which would likely result in the pooling of water and formation of a rough, ridged and uneven icy condition, the city would be chargeable with knowledge thereof and the jury should so find. This statement of the law appears to be substantially correct. Wright v. Atlantic & Pacific Tea Co., 216 Iowa 565, 246 N.W. 846, and citations; Hanousek v. Marshalltown, 130 Iowa 550, 107 N.W. 603. The request may have been suggested by our decision in Leonard v. City of Muscatine, 227 Iowa 1381, 291 N.W. 446.

In any event instruction 10 embodies the identical language contained in the request. It is clear this portion of No. 10 is quite important in view of the comparatively short time the icy condition existed before plaintiff fell and the existence for many years of the depression in the sidewalk where water accumulated and rough, ridged and uneven ice was likely to form in freezing weather.

Instructions Nos. 9 and 11 conflict with No. 10 in this respect. They require proof the city had notice of the rough, ridged and uneven condition of the ice and sufficient time elapsed for the city to remedy it by the exercise of ordinary care. Instruction 10 gives plaintiff the benefit of the rule of constructive notice based on the pre-existing condition of the walk which, the jury might find, was likely to result in rough, ridged and uneven ice. Instructions 9 and, particularly, 11 deprive her of such benefit.

It is of course axiomatic that instructions are to be taken together and read as a whole. Fagen Elevator v. Pfiester, 244 Iowa 633, 639, 56 N.W.2d 577, 580, and citations. But this principle does not obviate the error in instructions 9 and 11. Where, as here, one instruction (10) is correct and others (9 and 11) on the same subject are incorrect the jury is unable to determine which to follow and it is impossible to tell whether it followed

the correct guide or the incorrect one. State v. Wilson, 234 Iowa 60, 86–90, 11 N.W.2d 737, 750–52, and citations; 89 C. J. S., Trial, section 441; 53 Am. Jur., Trial, section 837. See also Pappas v. Evans, 242 Iowa 804, 809, 48 N.W.2d 298, 302.

IV. Plaintiff objected to particular instructions and to the charge as a whole as unduly emphasizing the nonliability of the city and containing too many cautionary admonitions favorable to it. We realize the giving of cautionary instructions usually rests largely in the discretion of the trial court. Orwig v. Chicago, R. I. & P. R. Co., 217 Iowa 521, 529, 250 N.W. 148, 90 A. L. R. 258, 265, and citations; 53 Am. Jur., Trial, section 610; 88 C. J. S., Trial, section 297b, page 809 ("but such instructions should be given with caution * * *."). See also Miller v. Griffith, 246 Iowa 476, 480, 481, 66 N.W.2d 505, 507, 508.

We think, however, the objection urged here is well taken. Instruction No. 12 is one of the vital ones. At the outset it refers to the first of the two specifications of negligence submitted to the jury, as explained in Division II hereof. We believe it is erroneous upon the considerations there expressed and is also vulnerable to the objection now considered. We will set out enough of No. 12 to indicate why we reach this conclusion.

The instruction in substance states in part: "The city * * * was required to use ordinary care to see that its sidewalks were maintained in a reasonably safe condition. If it does this it has done all the law requires. A city is not an insurer of those who use its sidewalks. It is not required to maintain them in a state of perfection. * * *

"A municipal corporation is not liable for every accident that may occur within its limits. Its officers are not required to do every possible thing that human energy and ingenuity can do to prevent accidents or injuries to the citizens. The defects in the sidewalk, to make the city liable, must be in themselves so dangerous that a person exercising ordinary prudence could not avoid injury in passing over them. It is only against defects of sufficient gravity to justify a careful and prudent person in anticipating danger from their existence that a municipality is bound to regard. Cities are not required to keep their sidewalks free from irregularities and trifling defects.

"Even though there may be a defect in the sidewalk, that alone would not be enough. It must be such as, in view of its location and use, to attract the attention of the city's officers and cause them, in the exercise of the degree of caution an ordinarily prudent person would exercise under like conditions, to anticipate danger therefrom to pedestrians passing along the walk."

There are other cautionary admonitions in other instructions. Numbers 6 and 7 are wholly of that type. Number 6 states twice there is no presumption defendant was negligent from the fact plaintiff was injured. Number 7 says defendant is entitled to be tried precisely as an individual. Instruction No. 9 states in two different ways that the city would not be liable for permitting ice and snow to accumulate on its walks from natural causes even though slippery. Instruction No. 11 repeats this statement at the outset.

Instruction No. 12, particularly, violates the rule that instructions should not give undue emphasis to any particular phase of the case favorable to either side (such as the various circumstances under which the city would not be liable) and even correct statements of the law, if repeated to the point of such undue emphasis, may constitute reversible error. State v. Haesemeyer, 248 Iowa 154, 165, 79 N.W.2d 755, 761, 762, and citations. See also Watters v. Iowa State Trav. Men's Assn., 246 Iowa 770, 789, 790, 69 N.W.2d 1, 11, 12.

V. Instruction No. 13 on the issue of freedom from contributory negligence says in part that plaintiff had the right to assume the city had exercised ordinary care to keep the sidewalk in a reasonably safe condition "but she had no right to assume that, if she did so assume, without care on her part, she could safely walk along the same * * *." Plaintiff objected to the quoted language as improperly assuming a matter not shown in evidence and as without evidential support since, it is said, there is no evidence plaintiff assumed she could safely walk without care or that she in fact did so walk.

We are not persuaded the statement was error when considered with the rest of the instruction. That it does not assume a matter not shown in evidence is clear in view of the qualifying language "if she did so assume." While there may be no evidence

plaintiff assumed she could safely walk on the sidewalk without care or that she did walk in such manner she had the burden on the issue of freedom from contributory negligence.

██ ██ VI. At the close of the evidence, on motion of the city, the court permitted the jury to view the place where plaintiff fell for the announced purpose of enabling it better to understand the evidence. Plaintiff objected to this on the ground there was then no water, ice or snow on the sidewalk and conditions were so different from those when plaintiff fell that viewing the place would serve no useful purpose and might confuse the jury.

It is true there was no form of precipitation on the walk at time of trial. And various photographs offered by plaintiff and the city showed the walk when dry and with water on it. There was also the plat showing elevations of the walk in and around the sunken area.

Nevertheless the trial court is vested with discretion in the matter of permitting the jury to view the place where a material fact occurred. Rule 194, Rules of Civil Procedure; Geagley v. City of Bedford, supra, 235 Iowa 555, 559, 16 N.W.2d 252, 255; 88 C. J. S., Trial, section 47a; 53 Am. Jur., Trial, section 442. While the court might have denied the city's request in view of the matters mentioned in the preceding paragraph, we are not persuaded it was an abuse of discretion to grant it. See the C. J. S. citation last above.

The errors in instructions pointed out in Divisions II, III and IV entitle plaintiff to a new trial against the city. (It is not argued there should have been a directed verdict in its favor.) —Affirmed as to the Hubbells; reversed as to the City of Des Moines.

All JUSTICES concur.